**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **JIMMY L. BROWN**, individually and on behalf of all others similarly situated, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. _____ |
| **MARKEL AMERICAN INSURANCE COMPANY,** | ) ) ) | JURY TRIAL DEMANDED |
| *Defendant.* | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Jimmy L. Brown, brings this class action on behalf of himself and all others similarly situated, by and through undersigned counsel, and for his Class Action Complaint against Defendant Markel American Insurance Company ("MAIC or "Defendant"), states and alleges, upon personal knowledge as to himself and otherwise upon information and belief, as follows:

## INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and all other similarly situated covered customers or former covered customers of MAIC who were wrongly denied Uninsured Motorist Coverage and/or Underinsured Motorist Coverage[1] under their MAIC private passenger motor vehicle insurance policies, lincluding but not limited to, car, SUV, motorcycle and other insurance policies to which UM/UIM coverage applies, ("Insurance Policies") based on a rejection of said coverages where there was one or none, but not both, of the properly completed rejection

---

[1] "Uninsured Motorist Coverage" is a policy provision that provides coverage for property and bodily damage by a motorist who is uninsured, whereas "Underinsured Motorist Coverage" is a policy provision that provides coverage for property and bodily damage caused by a motorist who has insufficient insurance on his or her own.

forms that were contractually required to reject UM and UIM coverages in the insureds' claims files.

2.     Pursuant to Plaintiff's and the Class's MAIC Insurance Policies, all insureds were required to properly fill out, sign, and return two, separate forms in order to reject Uninsured Motorists Coverage and Underinsured Motorists Coverage, and therefore exclude said coverages from their policies.  Failure to properly complete and perfect both coverage rejection forms under the terms of the policies meant that the policies would be endorsed with <u>both</u> Uninsured Motorist Coverage and Underinsured Motorist Coverage.  Indeed, the following bolded language appears at the end of one of the subject forms, which is incorporated into the policies:

> **WARNING:  If you: a) check more than one box; b) do not check any box; or c) fail to return this form, your policy will be endorsed with Uninsured Motorists coverage and Underinsured Motorists coverage with limits equal to your state's Financial Responsibility limits, for the additional premium charged.**
>
> **You MUST also complete the separate selection/rejection form for Underinsured Motorists coverage. If you fail to return the selection/rejection form for either Uninsured Motorists coverage or Underinsured Motorists coverage, your policy will be endorsed as stated in the above paragraph**.

3.     While Plaintiff Brown submitted one of the forms required under his policy (the Uninsured Motorists Coverage Form), he did not submit the second form (the Underinsured Motorists Coverage Form). As such, pursuant to the plain language of MAIC's Insurance Policy UM/UIM rejection form language, Plaintiff's policy was, or should have been, endorsed with both Uninsured Motorist Coverage and Underinsured Motorist Coverage.  Notwithstanding, and despite not having the requisite rejection forms to deny coverage, MAIC improperly denied Plaintiff's claim for Underinsured Motorist Coverage.

4.     Upon information and belief, MAIC's denial of coverage as described herein is a systematic policy and practice.  Plaintiff believes that it is MAIC's standard business practice to

deny claims for either Uninsured Motorist Coverage or Underinsured Motorist Coverage based on a purported rejection of those coverages even though, at most, only one of the two requisite forms was ever obtained or the forms were not properly completed. However, based on the plain language of the subject Insurance Policies' UM/UIM selection/rejection forms, this denial of coverage was in violation of the policy terms and the contract between the parties.

5.     Accordingly, MAIC has breached its contractual obligations to Plaintiff and members of the Class, including the duty of good faith and fair dealing, which has resulted in substantial harm to Plaintiff and the Class.

## PARTIES

6.     Plaintiff Jimmy L. Brown is a resident of Hempstead County, Arkansas. During the relevant time period, Plaintiff contracted with MAIC for private passenger motorcycle insurance. *See* Exhibits A through D attached hereto (Brown's Policy). Brown's Policy was in effect from June 26, 2014 through June 26, 2015. While Brown's Policy was in effect, Mr. Brown was negligently rear-ended by another motorist. As a result of this accident, Mr. Brown made a claim with MAIC for Underinsured Motorist Coverage, which was denied by MAIC.

7.     Defendant Markel American Insurance Company (MAIC) is an insurance company formed under the laws of the State of Virginia that maintains its principal place of business at 4521 Highwoods Parkway, Glen Allen, VA 23060. MAIC is licensed to write property and casualty insurance in all fifty states, including the State of Arkansas, as well as the District of Columbia and Puerto Rico, and underwrites and administers various motor vehicle policies, including powersports and motorcycle insurance.[2] According to the Defendant's information listed with the Arkansas Insurance Department, the service of process contact for MAIC is: CT Corporation

---

[2] *See* MKL 2017 Annual Report at p. 18, available at http://www.markelcorp.com/investor-relations.

System, 124 W. Capitol Ave., Suite 1900 Little Rock, AR 72201. *See* Arkansas Insurance Department Company Lookup Summary for MAIC attached as "Exhibit F."

8.      MAIC markets, underwrites, and administers insurance policies for purposes of this action. The material policy language for all MAIC Insurance Policies UM/UIM coverage rejection forms during the relevant time period is identical or substantially the same, and the claims processing of all subject MAIC policies is handled by claims specialists located at Defendant's office in Glen Allen, Virginia, and pursuant to corporate-wide policies and procedures.

## JURISDICTION AND VENUE

9.      Plaintiff and all proposed Class members are resident citizens of the United States where Uninsured Motorist Coverage or Underinsured Motorist Coverage is mandatory but can be rejected, excluding the State of Virginia and other states, like Virginia, where Uninsured Motorist Coverage or Underinsured Motorist Coverage is mandatory and cannot be rejected. Defendant is a Virginia citizen. According to MAIC, Plaintiff's individual claim exceeds $75,000. *See Brown v. Markel American Insurance Company*, Case No. 4:18-cv-04033-SOH, U.S.D.C. W.D. Ark., at Doc. 1. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Further, on information and belief there are more than 200 members of the proposed Class, citizens of most of the states in the United States, and the claims of the proposed Class Members exceed $5,000,000.00 in the aggregate, exclusive of costs and interest. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

10.     This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the State of Arkansas, is an authorized out-of-state insurance company in Arkansas, engages in continuous and systematic activities within the state, and has purposefully

availed itself of the benefits of doing business in Arkansas.  In fact, Defendant delivered a policy of the subject insurance to Plaintiff in Arkansas.

11.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because MAIC is deemed to reside in this District for purposes of venue.

## COMMON FACTUAL ALLEGATIONS

12.     Via its website www.markelinsurance.com, MAIC describes itself as an underwriter of insurance for private passenger vehicles, inlcuding being a "motorcycle insurance specialists for 40+ years,"[3] among other things.

13.     MAIC provides and/or provided private passenger vehicle, including auto and motorcycle, insurance to Plaintiff and members of the Class pursuant to standardized, form contracts that contain substantially similar language, especially the UM/UIM coverage rejection forms.

14.     Insurance companies, including MAIC, outline the contractual procedure for an insured to reject Uninsured Motorist Coverage and/or Underinsured Motorist Coverage in writing.

15.     In a form entitled Uninsured Motorists Coverage Arkansas Selection/Rejection Form ("Uninsured Motorists Coverage Form" or "Uninsured Motorists Coverage rejection form"),[4] MAIC outlines its procedure for rejecting the aforementioned coverages by stating, in pertinent part, as follows:

> **WARNING:  If you: a) check more than one box; b) do not check any box; or c) fail to return this form, your policy will be endorsed with Uninsured**

---

[3] *See* https://www.markelinsurance.com/motorcycle.
[4] MAIC's Uninsured Motorists Coverage Form is incorporated into its Motorcycle Insurance Policy by Article I. "Agreement" which states: "By accepting this policy you agree that the statements on the Declarations Page **and the application** are your agreements and representations."  *See* Exhibit A at Article I. "Agreement" (emphasis added).

> **Motorists coverage and Underinsured Motorists coverage with limits equal to your state's Financial Responsibility limits, for the additional premium charged.**
>
> **You MUST also complete the separate selection/rejection form for Underinsured Motorists coverage. If you fail to return the selection/rejection form for either Uninsured Motorists coverage or Underinsured Motorists coverage, your policy will be endorsed as stated in the above paragraph**.

*See* Exhibit B, attached hereto.  MAIC utilizes the same or similar selection/rejection form language in other states where Uninsured Motorists Coverage or Underinsured Motorists Coverage is mandatory but can be rejected in writing.

16.    Thus, based on the language in MAIC's UM/UIM Coverage/Rejection Forms, MAIC chose to contractually require a procedure that mandates a two-step written process whereby an insured is required to properly complete and return two, separate forms concerning uninsured and underinsured motorist coverages, respectively, in order to reject such coverages.

17.    Stated another way, failure to properly complete, execute and submit either MAIC's Uninsured Motorists Coverage rejection form or MAIC's Underinsured Motorists Coverage rejection form means that the Policy will include both types of coverages.

18.    Upon information and belief, MAIC engaged in a common business practice to deny insureds' claims for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage when one or none, but not both, of the two, requisite forms was properly completed, executed and submitted.

19.    MAIC's actions are in violation of the clear and unambiguous terms of its Insurance Policy's UM/UIM Coverage/Rejction Forms, which require MAIC to provide both types of coverages unless an insured (1) properly rejects Uninsured Motorist Coverage via MAIC's Uninsured Motorists Coverage Form, and (2) properly rejects Underinsured Motorist Coverage via MAIC's Underinsured Motorists Coverage Form.

## FACTUAL BACKGROUND SPECIFIC TO THE NAMED PLAINTIFF

20.     Plaintiff Brown and Defendant entered into a contractual relationship when Plaintiff Brown applied for and was issued a MAIC Motorcycle Insurance Policy on or about June 26, 2014, bearing Form number MT 4001-1095 and policy number MMT00000266917 ("Brown's Policy"). *See* Exhibit A.

21.     Brown's Policy was effective from June 26, 2014 through June 26, 2015. *See id*.

22.     The Declarations Page for Brown's Policy lists Bodily Injury Liability, Property Damage Liability, Passenger Liability, and Roadside Assistance coverages. The Declarations Page is attached hereto as Exhibit C.

23.     Defendant has produced a "Rejection of Personal Injury Protection Coverages Arkansas" signed by Brown on July 29, 2014. The PIP Rejection Form is attached hereto as Exhibit D.

24.     Defendant has produced an Uninsured Motorists Coverage Form signed by Brown on July 29, 2014.  See Exhibit B.

25.     The Uninsured Motorists Coverage Form bears the Form number RJ630AR-0804 and contains the following bolded language:

> **WARNING: If you: a) check more than one box; b) do not check any box; or c) fail to return this form, your policy will be endorsed with Uninsured Motorists coverage and Underinsured Motorists coverage with limits equal to your state's Financial Responsibility limits, for the additional premium charged.**

> **You MUST also complete the separate selection/rejection form for Underinsured Motorists coverage.  If you fail to return the selection/rejection form for either Uninsured Motorists coverage or Underinsured Motorists coverage, your policy will be endorsed as stated in the above paragraph.**

26.     Plaintiff Brown did not execute or return an Underinsured Motorists Coverage Form to Defendant.

27.     Defendant has stated that it does not possess, and cannot produce, a signed Underinsured Motorists Coverage Form rejecting such coverage for Plaintiff Brown.

28.     Based on the above-quoted language of Defendant's Uninsured Motorists Coverage Form, because Plaintiff Brown did not properly complete, sign and return both a Uninsured Motorists Coverage Form and a separate Underinsured Motorists Coverage Form, Plaintiff Brown's policy should "be endorsed with Uninsured Motorists coverage and Underinsured Motorists coverage with limits equal to [Arkansas's] Financial Responsibility limits" as stated in the plain language of the insurance forms.

29.     Indeed, pursuant to the contractual procedure required and outlined in the Uninsured Motorists Coverage Form, the Plaintiff did not reject Uninsured Motorist Coverage and did not reject Underinsured Motorist Coverage.

30.     On or about September 22, 2014, *i.e.* while Brown's Policy was in effect, Plaintiff Brown was negligently rear-ended by another motorist while he was riding his insured motorcycle.

31.     Plaintiff Brown settled for the policy limits of the tortfeasor's liability insurance on August 14, 2017.

32.     Plaintiff Brown suffered personal injuries which would entitle him to compensation in excess of the tortfeasor's policy limits for liability insurance.

33.     Subsequently, Defendant MAIC denied Plaintiff Brown's claim for Underinsured Motorist Coverage.  MAIC's initial denial, or disclaimer of coverage, letter dated August 2, 2017 cited as the sole basis for denial that Mr. Brown had rejected such coverage in writing.  *See* Letter from MAIC to Wm. Blake Montgomery dated August 2, 2017, attached as "Exhibit E."

34.     Upon information and belief, MAIC denied Plaintiff Brown's claim for Underinsured Motorist Coverage by erroneously relying on the presence of Defendant's Uninsured

8

Motorists Coverage Form in the claims file when, based upon the plain language of the form, Defendant would have to have both the Uninsured Motorist Coverage Form properly rejecting such coverage <u>and</u> the Underinsured Motorist Coverage Form properly rejecting such coverage in its possession to exclude and/or deny coverage for either uninsured or underinsured claims.

## **CLASS ACTION ALLEGATIONS**

35.     This action is brought by Plaintiff as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rules 23(a) and 23(b)(3), or, alternatively, 23(b)(2), of the Federal Rules of Civil Procedure.

36.     Plaintiff seeks certification of this action on behalf of the following plaintiff Class:

> All persons residing in the United States who (a) were covered under a contract of private passenger motor vehicle, including but not limited to motorcycle, insurance with MAIC, (b) the contract of insurance required that the insured reject Uninsured or Underinsured Motorist Coverage by remitting to MAIC both (i) a properly signed and completed Uninsured Motorists Coverage Form rejecting such coverage <u>and</u> (ii) a properly signed and completed Underinsured Motorists coverage form rejecting such coverage, (c) MAIC was informed of a potential loss, (d) MAIC denied or disclaimed, in writing, Uninsured Motorist Coverage or Underinsured Motorist Coverage solely on the basis that such coverage had been rejected by the insured, and (e) MAIC does not possess both (i) a properly signed and completed Uninsured Motorists coverage form rejecting such coverage, and (ii) a properly signed and completed Underinsured Motorists coverage form rejecting such coverage.

37.     Excluded from the Class are:

> (1) MAIC and its affiliates, officers, and directors;
> (2) members of the judiciary and their staff to whom this action is assigned;
> (3) all persons who have a pending bankruptcy or whose claims were discharged in a bankruptcy proceedings;
> (4) all persons who executed a release of the claims set forth herein or have pending actions against MAIC for denial of Uninsured Motorist Coverage or Underinsured Motorist Coverage;
> (5) Plaintiff's counsel; and

(6) resident citizens of Virginia and any other state where Uninsured Motorist Coverage or Underinsured Motorist Coverage is mandatory and cannot be rejected.

38.     Under settled class action law, the class definition is a working definition, and Plaintiff reserves the right to modify or refine the class definition when he seeks certification of a plaintiff class, including based upon information learned from discovery.   Further, Plaintiff reserves the right to seek class certification of only certain issues, such as liability.

39.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class is not currently known, Plaintiff estimates that it numbers greater than 200.  Plaintiff believes that the members of the Class, including their names and addresses and documents sufficient to prove liability in this action, are ascertainable through records maintained by MAIC in the ordinary course of its business.

40.     Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members.  In particular, the questions of law and fact common to the Class include, but are not limited to:

      A.     Whether the Class Members were contractually required to properly execute both the Uninsured Motorist Coverage rejection form and the Underinsured Motorist Coverage rejection form in order to reject Uninsured Motorist Coverage;

      B.     Whether the Class Members were contractually required to properly execute both the Uninsured Motorist Coverage Form and the Underinsured Motorist Coverage Form in order to reject Underinsured Motorist Coverage;

      C.     Whether MAIC's had a common policy or practice of denying uninsured and/or underinsured claims of Plaintiff and the Class when MAIC failed to obtain one or none, but not both, of the properly signed and executed Uninsured Motorist Coverage rejection form and the properly signed and executed Underinsured Motorist Coverage rejection form; and

      D.     Whether MAIC's common policy or practice constituted a breach of the insurance contracts issued by MAIC to Plaintiff and the Class.

10

   E. Whether MAIC had a common policy or practice of failing to review whether it possessed both the properly signed and executed Uninsured Motorist Coverage Form rejecting such coverage and the properly signed and executed Underinsured Motorist Coverage Form rejecting such coverage when making a coverage decision.

  41. Resolution of the foregoing common, predominant issues will substantially drive the litigation on behalf of the Class Members.

  42. Plaintiff's claims are typical of the claims of all Class Members, as all members of the Class, including Plaintiff, were wrongly denied coverage under their insurance contracts based on MAIC's policy and practice of denying coverage despite the fact that they did not properly sign and complete both the Uninsured Motorists Coverage rejection form and the Underinsured Motorists Coverage rejection form.  As such, Plaintiff's claims are typical of the claims of all Class Members because their claims arise from the same underlying facts and are based on the same factual and legal theories.  There is no conflict between the individually named Plaintiff and other members of the Class with respect to this action, or with respect to the claims for relief set forth herein.

  43. The named Plaintiff is the representative party for the Class, and is able to, and will fairly and adequately protect the interests of the Class. The attorneys for Plaintiff and the Class are experienced and capable in complex civil litigation, insurance litigation and class actions.

  44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. This action would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort.  Class treatment also would permit the adjudication of claims by Class members whose claims are too small, complex or expensive to individually

litigate against a large corporate defendant. Even if Class Members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed.

45.     In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and Class Members.  These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

46.     Documents supporting the common issues in this class action are in the possession of MAIC, including in their underwriting and claims files.  MAIC has in its possession all Uninsured and Underinsured Motorist Coverage rejection forms that it utilized in connection with administering class members' Insurance Policies and upon which coverage denials or disclaimers were based.  Further, MAIC has in its possession letters it sent denying or disclaiming Uninsured and Underinsured Motorist Coverage which state the bases therefor.  As such, common evidence supporting the asserted theory of liability in this action can easily be obtained from the paper and electronic files and documents of the Defendant.

47.     Certification is appropriate under Rule 23(b)(2) because MAIC has acted, or refused to act, on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief appropriate respecting the Class as a whole.

## <u>COUNT I – BREACH OF CONTRACT</u>

48.     Plaintiff hereby incorporates by reference all preceding paragraphs as though fully reproduced herein.

49.     MAIC entered into policies of insurance with the Plaintiff and members of the proposed Class. These policies govern the relationship between MAIC and the Class, including the Plaintiff, and specifically the manner in which uninsured coverage and underinsured coverage is selected and/or rejected.

50.     The insurance policies' UM/UIM coverage rejection forms were drafted by MAIC and contain identical, or substantially similar, language.

51.     Plaintiff and the Class complied with all material provisions and fulfilled their respective duties with regard to their policies.

52.     MAIC has wrongfully denied both uninsured and/or underinsured claims made by the Plaintiff and other members of the proposed Class based upon MAIC's erroneous determination that both Uninsured Motorist Coverage and Underinsured Motorist Coverage were rejected when something less than both the properly signed and completed Uninsured Motorist Coverage rejection form and the properly signed and completed Underinsured Motorist Coverage rejection form was documented in the insureds' underwriting or claim files.

53.     In denying these claims, MAIC breached its contractual duty to pay Plaintiff and members of the proposed Class.

54.     Engrafted in each of the Plaintiff's and Class Members' Insurance Policies is a duty that MAIC, the insurer, will act in good faith and deal fairly with its insureds.  This duty of good faith and fair dealing includes, without limitation, the following implied covenants:  (i) that the insurer will do nothing to interfere with its insureds' rights to receive benefits; (ii) that the insurer will not place its own interests before those of its insureds; (iii) that the insurer will exercise diligence, good faith, and fidelity in safeguarding the interest of its insureds; and (iv) that the

insurer will fairly and adequately inform its insureds of the nature and scope of their insurance coverage.

55.     MAIC breached its duty of good faith and fair dealing by, *inter alia*: (a) interpreting the terms and conditions of its Motorcycle Insurance Policies and their UM/UIM coverage/rejection forms in a manner that is inconsistent with the plain language of said contracts, solely in an effort to avoid providing coverage benefits to which Plaintiff and the Class are entitled; and (b) refusing its insureds' benefits, without regard to and in direct contradiction to relevant, contractual language in the Insurance Policies.

56.     Upon information and belief, MAIC breached its duty of good faith and fair dealing, as alleged herein, for the purpose of willfully and consciously withholding from Plaintiff and the Class the rights and benefits to which they are entitled under their Insurance Policies and in complete disregard of said rights. In doing so, MAIC has placed its own interests above those of Plaintiff and members of the Class.

57.     MAIC's actions in breaching its contractual obligations, including the duty of good faith and fair dealing, to Plaintiff and the members of the Class benefitted, and continue to benefit, MAIC.  Likewise, MAIC's actions damaged, and continue to damage, Plaintiff and the Class.

58.     MAIC's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and the members of the Class.

59.     Accordingly, Plaintiff and the members of the Class are entitled to recover damages sufficient to make them whole for all amounts MAIC unlawfully withheld by wrongfully denying the Plaintiff's and the Class Members' uninsured and/or underinsured claims.

60.     As a result, Plaintiff and the Class are entitled to damages.  Plaintiff and the Class may also be entitled to reasonable attorneys' fees and costs as well as prejudgment and post-judgment interest and any other allowed relief.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, requests that the Court grant the following relief:

A.     Determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.     Determine that Plaintiff is a proper Class Representative and approve Plaintiff's selection of counsel as Counsel for the Class;

C.     Determine that MAIC has breached its contractual obligations to Plaintiff and the Class;

D.     Award Plaintiff and the Class compensatory damages ;

E.     Award Plaintiff and the Class any additional allowable damages;

F.     Award Plaintiff and the Class pre-judgment and post-judgment interest;

G.     Enter a declaratory judgment enjoining MAIC from engaging the unlawful conduct complained of herein;

H.     Award Plaintiff and the Class reasonable attorney's fees and costs; and

I.     Grant such other legal and equitable relief as the Court may deem appropriate.

Dated this ___ day of May 2020.

Respectfully Submitted,

JIMMY L. BROWN

PLAINTIFF


By:   Montgomery Law Firm, PLLC
Wm. Blake Montgomery, AR Bar No. 2015043
P.O. Box 785
Hope, Arkansas 71802
(870) 777-6700 Phone
(870) 777-6703 Fax
Blake@bmontgomerylaw.com

and

Sach D. Oliver, AR Bar No. 2006251
Frank H. Bailey, AR Bar No. 74004
T. Ryan Scott, AR Bar No. 2008161
Geoff D. Hamby, AR Bar No. 2015171
BAILEY & OLIVER LAW FIRM
3606 Southern Hills Boulevard
Rogers, AR 72758
(479) 202-5200 Phone
(479) 202-5605 Fax
soliver@baileyoliverlawfirm.com
fbailey@baileyoliverlawfirm.com
rscott@baileyoliverlawfirm.com
ghamby@baileyoliverlawfirm.com

and

Jeffrey P. Leonard, ASB 2573-J67L
HENINGER GARRISON DAVIS, LLC
2224 1st Ave. N.
Birmingham, Alabama 35203
(205) 346-0062 Phone
(205) 326-3332 Fax
JLeonard@hgdlawfirm.com
[*Pro hac vice application forthcoming*]

*Attorneys for Plaintiff and the Proposed Class*